UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.         ) | Crim. No. 06-285(RMC) |
| CHRISTOPHER HAYNIE  ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, Christopher Haynie, through undersigned counsel, respectfully submits his Memorandum in Aid of Sentencing.

**Procedural History**

Mr. Haynie will appear before the Court for his Sentencing Hearing on Friday, June 8, 2007. On March 23, 2007, Mr. Haynie entered a guilty plea Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment Exceeding One year in violation of 18 U.S.C. § 922(g)(1) and to Simple Possession of Controlled Substance in violation of 21 U.S.C. § 844(a). The indictment charged Mr. Haynie with committing the two offenses on June 2, 2006. Pursuant to the conviction Mr. Haynie faces a maximum sentence of 10 years of incarceration, followed by a term of supervised release of not more than three years, a fine of $250,000.00 dollars and a special assessment of $100.00 dollars. The Simple Possession conviction carries a maximum prison term of one year.

In her Pre-Sentence Investigation Report ("PSR") Probation Officer Sherry Brandon calculated Mr. Haynie's sentencing range at 77 to 96 months of incarceration pursuant to the

1

advisory United States Sentencing Guidelines. The range is based on a final Base Offense Level 21 and a Criminal History Category VI[1].

**Factual History**

Mr. Haynie's criminal conduct which encompasses, convictions for a sexual assault case and for armed robbery in the Superior Court and the instant federal firearms charge took place within a concentrated period of less than two weeks. Mr. Haynie committed the sexual assault on May 19, 2006, the armed robbery on May 26, 2006 and the charged firearm was recovered on June 2, 2006. When a Federal Grand Jury indicted Mr. Haynie on September 26, 2006, he was already detained without bond on the two Superior Court cases. Mr. Haynie was indicted in a four-count indictment that resulted from the execution of a search warrant for residence that he was sharing with his mother. The search resulted in the recovery of the firearm, and assorted illegal narcotics including crack cocaine, marijuana, and ecstacy.

**ARGUMENT IN SUPPORT FOR A SENTENCE OF 77 MONTHS TO
RUN CONCURRENT TO THE 21 YEAR SENTENCE THAT MR. HAYNIE
RECEIVED IN THE SUPERIOR COURT IN CASES CF1- 20787 AND CF3-11133**

Mr. Haynie is before the Court after he committed a number of very serious offenses. While his case has been, pending Mr. Haynie has come to the sobering realization that he will be incarcerated for the next two decades. During this extensive incarceration his two children, Shane Jones and London Kristina Haynie, will become young adults. Mr. Haynie knows that he will be missing out on the most important and formative years of his children growing up. Of the many troubling and distressing factors for Mr. Haynie is the realization that upon his released from prison

---

[1] The Plea agreement stipulated that Mr. Haynie's final Base Offense Level was 17 after a reduction for acceptance of responsibility. However, the parties did not anticipate the application of a four point enhancement pursuant to USSG 2K2.1 see PSR ¶ 20

for the federal and the Superior Court convictions he will have spent the majority of his adult life incarcerated. Sadly, this will be a familiar experience for Mr. Haynie.

As the PSR points out, Mr. Haynie has been involved with the criminal system since 1994 when he was fifteen years old. Although, Mr. Haynie's unlawful conduct started when he was a juvenile, presumably the nature of the crime, armed robbery, landed him in the adult criminal justice system. It can be fairly assumed that his prosecution in the adult system has had drastic consequences on Mr. Haynie's life.[2]

First, the prosecutorial charging decision precluded Mr. Haynie from receiving rehabilitation services and programs that are specifically designed for juveniles. Unfortunately, there is no way to accurately gauge the long term detriment that Mr. Haynie suffered as a result of being processed in a system designed for adults. Equally remarkable is that prior to the prosecution in the adult system Mr. Haynie had never been charged as a juvenile. Regrettably, Mr. Haynie was never provided with juvenile services but was instead processed in adult court on his first criminal transgression.

There is no dispute that Mr. Haynie has made terrible choices in his adult life. The critical question and concern are how can Mr. Haynie salvage the rest of his adult life, when he is released from prison in his late forties. Understandably, the government and Court must be frustrated with

---

[2] A study by the Department of Justice titled "Juveniles in Adult Prisons and Jails" specifically found that "[T]he experience of being incarcerated is traumatic for youth, particularly when placed in an adult facility." at 17 **See** JUVENILES IN ADULT PRISONS AND JAILS: A NATIONAL ASSESSMENT (October 2000), United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance. The study further notes that "[W]hat may be acceptable as punishment for adults may be unacceptable for children. Children have a very different perception of time (5 minutes may seem like an eternity), and their capacity to cope with sensory deprivation is limited." at 25

Mr. Haynie's repeated contacts with the criminal system and his failure to comply with Court ordered periods of supervision.

When Mr. Haynie appears for sentencing, he will have already received a prison sentence of twenty-one years or two hundred and fifty-two months for the two convictions in the Superior Court. (See PSR ¶ 44, 45). In the armed robbery case, CF3-11133, Mr. Haynie received a sentence of 72 months which was ordered to run consecutive to the sentence of one hundred and eighty months for the sexual assault conviction. Thus, the armed robbery sentence of seventy-two months does take into account, indirectly, the gun at issue before the Court.

While his present situation is bleak, Mr. Haynie has managed to remain hopeful about his future. Mr. Haynie has never blamed his present situation on anyone. He acknowledges that he alone is responsible for his present predicament. Mr. Haynie is prepared to take advantage of the various educational and vocational programs that are available in the Bureau of Prison. He is cognizant that once he is released from prison he will be placed on a three-year period of Supervised Release in the instant case and that he will be on a period of supervised release of nine years pursuant to the Superior Court Convictions. Accordingly, even if the Court were to impose a concurrent sentence of seventy-seven months of incarceration, the Court will regain jurisdiction with the authority to re-incarcerate him for any violations, regardless of the severity of the violation.

**A.     PURSUANT TO UNITED STATES v. BOOKER , 18 U.S.C. § 3553(a), 18 U.S.C.§ 3584(a), AND 28 U.S.C.§ 991(b)(1)(B) THE COURT HAS AUTHORITY TO SENTENCE MR. HAYNIE TO A CONCURRENT SENTENCE OF 77 MONTHS TO THE PRISON TERM OF TWENTY-ONE YEARS THAT HE RECEIVED IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory sentencing guidelines as they were applied were unconstitutional. The Court further held that judges

are required to "take account of the Guidelines <u>together</u> <u>with</u> other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court.

Those factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants. <u>U.S. v. Clifton Price</u> 409 F.3d 436, 442 (D.C. Cir. 2005) Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." <u>U.S. v. Jabber</u> 362 F.Supp.2d 365, 369 (D. Mass. 2005).

Application of the advisory sentencing guidelines provides the court with flexibility in determining the appropriate sentence for Mr. Haynie. Under the advisory sentencing regime the Court can take into account the particularized factors of Mr. Haynie's life and not just the fact of his criminal conduct. This approach is consistent with the goals of 28 U.S.C § 991, the enabling statute of the Sentencing Commission, and 18 U.S.C. § 3553(a), the sentencing statue. Both statues contemplate a flexible and particularized approach to sentencing determinations that were paid lip service under the pre-<u>Booker</u> mandatory sentencing guideline regime.  28 U.S.C. § 991(b)(1)(B) supports a sentence that is not determined, solely, by a rigid mechanistic formula that ignores the statutory factors set forth in 18 U.S.C. § 3553(a).

Congress created the Sentencing Commission with the laudable goal of providing a method and structure for Courts to achieve uniformity and fairness in sentencing.  However, the enabling

5

statute did not lose sight nor preclude the notion of individualized sentencing. 28 U.S.C. § 991(b)(1)(B) promotes the idea of a sentence that is not solely determined by a rigid formula in allowing Courts to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices."

18 U.S.C. § 3553(a)(1) directs the Court to look at Mr. Haynie' history and nature and circumstance of the offense. Although, the nature of the offense is a case of constructive possession of a gun, the circumstances of the offense were related to another criminal offense. The Statement of Facts appended to the plea agreement states that Mr. Haynie's residence was searched after it was reported that he used the same firearm in relation to an armed robbery. Mr. Haynie entered a guilty plea to the armed robbery and he was sentenced to seventy-two months of incarceration.

On account of the related armed robbery Mr. Haynie's Base Offense Level was enhanced by four points which the parties didn't anticipate in negotiating the plea agreement. In the absence of a related conviction and sentence, the Court would be reasonable in imposing a sentence within the enhanced guideline range of 77 to 96 months. However, a consecutive sentence of even the low end of seventy-seven months to the twenty-one year term of incarceration would amount to nothing less than a continuation of a punitive punishment. Mr. Haynie's history would suggest that he needs to be severely sanctioned for his conduct. However, his history also presents a compelling and sad portrait of a young man who had a terrible start in life.

Mr. Haynie began using drugs at the age of 13. He began using marijuana then PCP and cocaine. Although he has received some drug treatment, it is clear that he is in dire need of comprehensive drug treatment. Substance abuse treatment is a priority for Mr. Haynie when he

enters the Bureau of Prison. Mr. Haynie's wants the treatment because he recognizes that his life long addiction has severely affected his judgment. His criminal conduct and the people that he has associated with have been directly related to his need to satisfy his addition. This should come as no surprise since both of Mr. Haynie's parents suffered from substance abuse. His father was an alcoholic and his mother abused drugs throughout much of his childhood.

Given his parents addictions it's understandable how Mr. Haynie started spending a lot of time on the street with individuals who were in search of the same high that devastated his parents. In the absence of role models at home Mr. Haynie proceeded, irreversibly, on a path that resulted in the loss of his freedom as a juvenile and which will now continue for the next two decades. Sadly, Mr. Haynie's older brothers, Charles and Waverly Haynie had their own problems with the criminal justice system which included periods of incarceration. In short, neither Mr. Haynie's brothers nor his parents were in a position to provide the model of maturity and responsibility that has been missing from his life.

The Court can take account and consider Mr. Haynie's childhood of constructive abandonment and abuse in arriving at a reasonable sentence. 18 U.S.C. § 3661 specifically allows for such consideration by providing that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Pursuant to 18 U.S.C. § 3553(a)(1)(2)(A) Mr. Haynie' sentence must reflect the seriousness of the offense. Because Mr. Haynie committed a serious violation, the Court has to address his conduct and strike the appropriate balance between the punitive sanction and the long term goals of rehabilitation. As it stands now Mr. Haynie is facing a sentence of 77 to 96 months of incarceration

that would come on the heels of a prison term of twenty-one years. The critical question is whether a consecutive or concurrent sentence better accounts for the seriousness of the offense and "promote[s] respect for the Law and provide[s] just punishment."

Removing Mr. Haynie from the community for nearly two decades will more than adequately protect the community. Moreover, the sentence sends the unambiguous message that his behavior has been completely unacceptable. During his two decades of incarceration Mr. Haynie can finally learn a skill and begin the process of rehabilitation that has never taken place. Although Mr. Haynie's rehabilitation efforts have been negligible, twenty years of incarceration will leave him no choice but to learn a trade and to once and for all address his addiction problems.

18 U.S.C. § 3553(a)(2)(D) directs the Court to consider Mr. Haynie's sentence in light of the educational or vocational training that will support his rehabilitation and education. There is no question that Mr. Haynie is in dire need of rehabilitation, specifically drug treatment and education. Hopefully, Mr. Haynie will take advantage of every educational and vocational program that is available to him. Mr. Haynie has to make dramatic changes in order to salvage the remainder of his life. That will only take place if he is committed to learning a trade that will allow him to support himself when he is released from prison.

Supervised Release after twenty-one years of incarceration will have the dual benefit of providing continued deterrence and community based rehabilitation. By the time Mr. Haynie is done with supervision, if he is successful, he will be in his mid fifties. Seen in that long term view, Mr. Haynie will certainly come to understand and appreciate why he has to become law abiding.

A concurrent sentence that will be followed by mandatory terms of supervision of three and up to nine years, and mandatory lifetime sex offender registration amounts to "just punishment"

when the Court considers the totality of Mr. Haynie's life.

**CONCLUSION**

Mr. Haynie can still change his life around. He knows that if he ever wants to have a meaningful relationship with his children he needs to be productive during his long period of incarceration. He has indicated that he wants the opportunity to return to the community and to finally be the responsible father and productive citizen that he has never been. For these reasons, undersigned counsel requests that the Court sentence Mr. Haynie to a term of incarceration of seventy-seven months and that the sentence run concurrent with the sentence of two hundred and fifty-two months imposed in the Superior Court for the District of Columbia.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500